UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DEBORAH WHOULEY | : | |
| | : | |
| v. | : | C.A. No. 08- 411S |
| | : | |
| SHOREHAM INC.,<br>BALLARD'S INN REALTY, LLC and<br>OVERLOOK REALTY, LLC | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This matter is presently before the Court on a Motion to Dismiss (Document No. 4) filed by Defendant Shoreham, Inc. ("Shoreham"). Shoreham seeks dismissal of Count IV of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff Deborah Whouley ("Plaintiff") filed a timely Objection to Shoreham's Motion to Dismiss. (Document No. 6).

The Motion has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); LR Cv 72. A hearing was held on February 6, 2009. After reviewing the Motion and the Objection, hearing oral arguments and performing independent research, I recommend that Shoreham's Motion to Dismiss (Document No. 4) be DENIED.

**Statement of Facts**

The facts underlying the Complaint arise out of Plaintiff's summer employment and living arrangements on Block Island in 2005. Plaintiff alleges that Shoreham owned and operated a restaurant/tavern doing business as Ballard's Inn and that she was employed as a

bartender/waitress at that establishment during the summer of 2005. (Document No. 1-2, ¶¶ 6, 8). Plaintiff sues two other entities (Ballard's Inn Realty, LLC and Overlook Realty, LLC) who have not yet answered or otherwise moved as to Plaintiff's Complaint. Plaintiff asserts that all three Defendants (collectively or individually) "owned, occupied, operated, maintained and/or controlled a hotel/boarding house in the 'Overlook Building'" and that Defendants were using the Overlook Building as housing for summer employees including those working at Ballard's Inn. Id. ¶¶ 7, 10.

In connection with her employment with Shoreham, Plaintiff resided in housing provided for summer employees at the Overlook Building from May 2005 until September 2005. Id. ¶ 8. The Overlook Building had three floors, and the second and third floors had exterior stairways that were used as access to the rooms on those floors. Id. ¶ 10. At the top of these exterior stairways were balconies or walkways with railings that gave tenants access to their rooms. Id. Plaintiff's room was on the third floor of the Overlook Building and, thus, she used these exterior stairways and balconies for access to her room. Id. ¶¶ 9, 10. While the balconies were primarily used as walkways to access the rooms on the second and third floors, many tenants also used the balconies as a place to congregate and socialize. Id. ¶ 12. This was allegedly done with the knowledge of Defendants leading up to the incident that caused Plaintiff's injuries. Id.

On August 16, 2005, Plaintiff and other guests and tenants of the Overlook Building were standing outside on the third-floor balcony. Id. ¶ 13. Plaintiff "leaned or rested against the railing, and fell over the railing" about thirty to forty feet to the ground sustaining serious physical injuries, including multiple fractures to her spine, as well as a traumatic brain

injury/concussion. Id. ¶ 13-14. Plaintiff alleges that the railing over which she fell was only thirty-four inches in height, measured vertically from the walking surface of the balcony to the top of the railing. Id. ¶ 11. Plaintiff asserts that the applicable building code regulations required guards or railings of at least forty-two inches in height. Id. Thus, Plaintiff alleges that the railings at the Overlook Building were eight inches shorter than required by the building code. Id.

Plaintiff filed her Complaint in Rhode Island Superior Court alleging negligence and violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act (the "Act"), R.I. Gen. Laws § 6-13.1-1 et seq. Defendants removed the case to this Court on diversity grounds. In the instant Motion, Shoreham alleges that Plaintiff has failed to state a claim against it under the Act.

**Standard of Review**

Shoreham moves to dismiss only as to Count IV of Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, see Greater Providence MRI Ltd. P'ship v. Med. Imaging Network of S. New England, Inc., 32 F. Supp. 2d 491, 493 (D.R.I. 1998); Paradis v. Aetna Cas. & Sur. Co., 796 F. Supp. 59, 61 (D.R.I. 1992), taking all well-pleaded allegations as true and giving the plaintiff the benefit of all reasonable inferences, see Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Carreiro v. Rhodes Gill & Co., 68 F.3d 1443, 1446 (1st Cir. 1995); Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994). If under any theory the allegations are sufficient to state a cause of action in

accordance with the law, the motion to dismiss must be denied. See Hart v. Mazur, 903 F. Supp. 277, 279 (D.R.I. 1995). While a plaintiff need not plead factual allegations in great detail, the allegations must be sufficiently precise to raise a right to relief beyond mere speculation. See Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating the "no set of facts" rule of Conley v. Gibson, 355 U.S. 41, 44-45 (1957)). "The complaint must allege 'a plausible entitlement to relief' in order to survive a motion to dismiss." Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008) (quoting Twombly, 550 U.S. at 559.

**Discussion**

**A. Overview of the Act**

The Act declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are…unlawful." R.I. Gen. Laws § 6-13.1-2. Similar to consumer protection statutes in other states, the Rhode Island Act is designed primarily to deal with individuals and businesses who act in a misleading way in their commercial dealings with the consuming public. To enforce the provisions of the Act, the Rhode Island General Assembly provided consumers with a private right of action. See R.I. Gen. Laws § 6-13.1-5.2(a). This section states in pertinent part:

> Any person who purchases or leases goods or services primarily for personal, family, or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act, or practice declared unlawful by § 6-13.1-2, may bring an action…to recover actual damages….The court may, in its discretion, award punitive damages and may provide other equitable relief that it deems necessary or proper.

Id. The Act applies to "persons," and although persons is defined broadly in the Act (R.I. Gen. Laws § 6-13.1-1(3)) as natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations, and any other legal entity, only those "persons" who purchase or lease goods or services primarily for personal, family, or household purposes may sue under the Act so the coverage of the Act is actually much narrower. See Scully Signal Co. v. Joyal, 881 F. Supp. 727 (D.R.I. 1995) (holding that the Act provides plaintiff no right to relief because plaintiff is a corporation and thus does not have standing to assert a claim under the Act); see also Schroeder v. Lotito, 577 F. Supp. 708, 717 (D.R.I. 1983) (dismissing plaintiffs' claims under the Act because individual plaintiff suing in his official capacity as a union member and officer and his union were not within the class of persons permitted to sue under the Act). The Rhode Island Supreme Court has held that in order to sustain a claim under the Act, a plaintiff must establish that (1) he/she is a "consumer," and (2) "defendant is committing or has committed an unfair or deceptive act while engaged in a business of trade or commerce." Kelley v. Cowesett Hills Assocs., 768 A.2d 425, 431 (R.I. 2001).

**B. Whether Plaintiff is a Consumer Under the Act**

Shoreham's argument for dismissal of Count IV is cursory at best and inadequate to support a dismissal order under Fed. R. Civ. P. 12(b)(6). See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") Shoreham devotes less than three pages of its brief to its legal argument and well over half of that is a lengthy quotation of R.I. Gen. Laws § 6-13.1-1(6). (Document No. 4 at pp.

4-6). The thrust of Shoreham's argument that Plaintiff "has not – and cannot – allege that Shoreham committed any unfair or deceptive trade practice" is stated by it as follows (without citation to any supporting legal authority):

> The reason for this is obvious: operating a rental complex is not the sort of commercial conduct that is the focus of the [Act]. The [Act] is essentially concerned with the advertisement and sales of goods and services to the public at large, not regulation of the landlord/ tenant relationship. By alleging a...claim [under the Act] in the context of a personal injury matter, Plaintiff is trying to fit a square peg into a round hole.

Id. at p. 5.

Only one case speaks to the coverage of the landlord/tenant relationship by the Act. In Kelley, the Rhode Island Supreme Court held that the Act did not apply to the particular circumstances of the parties' landlord/tenant relationship. 768 A.2d at 431. There, the plaintiff was a tenant in an apartment owned and managed by the defendant. Id. at 427. In connection with extending the plaintiff's lease, the defendant agreed to repair the kitchen floor in the plaintiff's apartment. Id. The plaintiff later collected tile samples for asbestos testing and brought several claims alleging asbestos exposure during removal of the old kitchen tile. Id. The Court held that the role of the respective parties could not reasonably be construed to establish a consumer/vendor relationship under the Act because there was no contractual agreement for the repair of the floor, and a tenant asking a landlord to make repairs within the apartment does not elevate the tenant to a consumer under the Act . Id. at 431.

No other cases in Rhode Island discuss the Act in the context of the landlord/tenant relationship. Plaintiff's relationship with Shoreham here, though, is different than in Kelley.

In the present case, Plaintiff was not only a resident/tenant in Shoreham's rooming house, but also an employee at the business that provided or arranged the housing; hence, Plaintiff and Shoreham's relationship, as alleged, was much larger in scope than the typical landlord/tenant relationship and thus more commercial in nature. In addition, Plaintiff alleges that she fell over a railing that was knowingly not in compliance with the state building code and that she was not warned about this defect even though another individual was allegedly injured in a prior similar accident. Given the fact that the scope of the parties' relationship, here, appears to be geared more toward a larger commercial business rather than a mere landlord/tenant lease and because there are allegations of knowing disregard of building code laws, this case is distinguishable from Kelley.

It is helpful to look at similar consumer protection statutes from surrounding jurisdictions for further guidance on the scope of the Act. The Massachusetts Consumer Protection Statute, Mass. Gen. Laws ch. 93A, § 1 et seq., ("Chapter 93A") is similar to the Act in both purpose and language. In Massachusetts, courts have held that the landlord/tenant relationship can be subject to a claim under Chapter 93A. For example, in Donofrio v. Panagiotes, No. 918675, 1994 WL 878807 (Mass. Super. Dec. 6, 1994), aff'd 662 N.E.2d 249 (Mass. App. Ct. March 20, 1996), the Massachusetts Appeals Court affirmed a Chapter 93A violation won by a commercial tenant in a mall when the landlord intentionally turned off the water supply to the tenant (a hair salon) in response to a complaint about the conditions of the landlord's property. In addition, the Supreme Judicial Court of Massachusetts held in Whelihan v. Markowski, 638 N.E.2d 927 (Mass. 1994), that an apartment tenant may file suit against the landlord under Chapter 93A for

deceptive trade practices related to the improper installation of substandard glass in a "sticky" exterior door in violation of the state building and sanitary codes.

There is not enough information in the record to conclude that Plaintiff and Shoreham's housing/employment relationship, as a matter of law, falls outside the scope of the Act. Plaintiff only must allege facts that, if taken as true, could reasonably satisfy each element of the claim. See Fed. R. Civ. P 12(b)(6). Upon review of the Complaint and the parties' briefs, Count IV is not based solely on a garden variety landlord/tenant dispute as suggested by Shoreham. Shoreham has failed to establish that the allegations underlying Count IV, taken as true and in a light most favorable to Plaintiff's position, present an insurmountable bar to relief. At this early pleading stage, Plaintiff has at least raised a plausible claim for relief under the Act with enough general facts plead to raise a reasonable expectation that discovery could reveal evidence supporting this element of the claim. See Twombly, 550 U.S. at 559.

**C. Whether Plaintiff Alleges Unfair or Deceptive Acts in Trade or Commerce**

In addition to showing he or she is a private consumer, a plaintiff suing under the Act must also allege facts that, if taken as true, would show that a defendant committed, or is committing, unfair or deceptive trade practices while engaged in the business of trade or commerce. See Kelley, 768 A.2d at 431. Plaintiff specifies in her Opposition that Shoreham has violated two specific provisions of the Act. Plaintiff alleges that Shoreham violated subsection (xiii) by "[e]ngaging in any act or practice that is unfair or deceptive to the consumer" and subsection (xiv) by "[u]sing any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. Gen. Laws § 6-13.1-1(5). More specifically,

Plaintiff alleges that Shoreham's conduct in designing, constructing and/or maintaining exterior balconies, knowing that the railings were in violation of the building code and its failure to warn and/or prevent tenants, guests and patrons from assembling on such balconies, constitutes a deceptive or unfair trade practice.

Whether allegations of building code violations resulting in a tenant's injuries fall within "unfair or deceptive trade" practices is an issue Rhode Island courts have yet to address. The Rhode Island General Assembly directed courts to give "due consideration and great weight…to the interpretations of the federal trade commission and the federal courts relating to § 5(a) of the Federal Trade Commission Act." R.I. Gen. Laws § 6-13.1-3. The Rhode Island Supreme Court adopted the Federal Trade Commission Act's definition of "unfair" stating that whether a practice is "unfair" under R.I. Gen. Laws § 6-13.1-1 requires consideration of "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers (or competitors or other businessmen)." Ames v. Oceanside Welding & Towing Co., 767 A.2d 677, 681 (R.I. 2001) (citing FTC v. Sperry & Hutchinson Co., 405 U.S. 233, 240-244 (1972)).

Shoreham has also plead enough facts to state a plausible claim for relief as to this element. The operation of a rooming house to accommodate a seasonal workforce for a related business with knowledge that it was in violation of the applicable building code, if true, could

certainly fall within the meaning of unfair. In addition, knowingly failing to warn of building code violations when a summer employee is hired and offered seasonal housing, could be interpreted as an unfair or deceptive act or practice. In addition, Plaintiff's counsel represented at the hearing that prior to Plaintiff's accident, another incident occurred at the Overlook Building involving "a fall from exactly the same balcony." This allegation, if true, lends further support to Plaintiff's notice and failure to warn claim.

Shoreham argued at the hearing that its actions were not unfair or deceptive because Plaintiff would likely have rented the apartment even if she had known about the building code violations. However, based on the bare information in the Complaint, it is unclear whether Plaintiff stayed at the Overlook Building because of mere convenience, because she was required to do so as an employee of Shoreham's related business, because of limited availability of affordable summer rooms or because she relied upon an offer from Shoreham for summer housing. While the first reason is irrelevant for purposes of the Act, the latter three reasons, if supported by the facts, could lend further support to the alleged unfairness of Shoreham's actions regarding the Overlook Building. If these allegations are true, which this Court must assume for purposes of this Motion, then Plaintiff has sufficiently alleged facts that could reasonably place Shoreham's actions within the scope of "unfair" or "deceptive" within the meaning of the Act.

Finally, the Act defines "trade" and "commerce" as "the advertising, offering for sale, sale, <u>or distribution</u> of any services and <u>any property</u>, tangible or intangible, <u>real</u>, personal, or mixed, and any other article, commodity, or thing of value wherever situate, and include any trade or commerce directly or indirectly affecting the people of this state." R.I. Gen. Laws § 6-

13.1-1(4) (emphasis added). Plaintiff alleges that Shoreham served as landlord/employer to seasonal tenants/employees who paid room rent to Shoreham. Plaintiff has therefore alleged facts that, if true, would show that Shoreham was in the business of employing summer workers and renting housing to them to support that employment. These facts would certainly be sufficient for purposes of showing that the unfair acts were done in "trade" or "commerce" under the Act.

**Conclusion**

For the reasons stated, I recommend that Defendant Shoreham's Motion to Dismiss (Document No. 4) Count IV of Plaintiff's Complaint be DENIED, but without prejudice to Shoreham again raising this issue at a later stage, if appropriate, on the basis of a more fully developed record.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia- Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
February 27, 2009